GAUTAM DUTTA (State Bar No. 199326)
BUSINESS, ENERGY, AND ELECTION LAW, PC
1017 El Camino Real # 504
Redwood City, CA  94063
Telephone:  415.236.2048
Email:  Dutta@BEELawFirm.com
Fax:  213.405.2416

Attorneys for Plaintiffs
DONALD BLANKENSHIP and DENISE PURSCHE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD BLANKENSHIP and DENISE PURSCHE<br><br>*Plaintiffs*,<br><br>vs.<br><br>GAVIN NEWSOM, in only his official capacity as Governor of California; and ALEX PADILLA, in only his official capacity as Secretary of State of California;<br><br>*Defendants*. | CASE NO. 3:20-cv-04479-RS<br><br>**PLAINTIFFS' OBJECTIONS TO THE DECLARATION OF RACHELLE DELUCCHI**<br><br>JUDGE:  Hon. Richard Seeborg<br><br>Hearing Date:  TBD |

Plaintiffs Donald Blankenship and Denise Pursche hereby **object** to the Declaration of Rachelle Delucchi (filed July 10, 2020), and ask that the improper material contained in those documents be **excluded from evidence:**

| ITEM AT ISSUE | PLAINTIFFS' OBJECTIONS |
|---|---|
| **1. Declaration of Rachelle Delucchi ¶7** (proffering statutory requirements to qualify as a ballot-qualified political party) | *Relevance* [FRE 401]. The statutory requirements to qualify as a ballot-qualified political party are not relevant, for Mr. Blankenship is not seeking to appear on the Nov. 3, 2020 Presidential ballot as the nominee of any ballot-qualified political party.<br><br>As the district court held in *Esshaki*, a candidate has the constitutional right to access the Presidential ballot in the manner that he or she – and not the government – *chooses*. *Esshaki v. Whitmer*, __ F.Supp.3d __, 2:20-CV-10831-TGB, 2020 WL 1910154 (E.D. Mich. Apr. 20, 2020), at *6 (rejecting government's argument that candidate seeking to appear on ballot could access ballot as a write-in candidate); *see also Lubin v. Panish*, 415 U.S. 709, 719 n.5 (1974); *Anderson v. Celebrezze*, 460 U.S. 780, 799 n.26 (1983); *Graveline v. Johnson*, 336 F.Supp.3d 801, 811 (E.D. Mich. 2018). *Cf. Common Sense Party v. Padilla*, No. 2:20-cv-01091-MCE-EFB, 2020 WL 3491041 (E.D. Cal. June 26, 2020), at *1-*2[1] (describing manner in which a political body may qualify as a ballot-qualified party). |
| **2. Declaration of Rachelle Delucchi ¶¶14-18 & Exhibits 5-8** (proffering evidence regarding statewide ballot initiatives that qualified for the Nov. 3, 2020 ballot) | *Relevance* [FRE 401]. The issue of whether or not any statewide initiatives have qualified for the Nov. 3, 2020 ballot is not relevant for three reasons. *First*, a violation of the right to place an initiative on the ballot does not involve the same analysis as that regarding a violation of one's voting rights (e.g., Denise Pursche's right to vote for Presidential candidate Donald Blankenship). |

---

[1]     Defendants' papers cite *Common Sense Party* for a page that does not exist in the Westlaw version of that ruling. *See* Defendants' July 10, 2020 Opposition, at 12:19 (*citing* page "*12" of *Common Sense Party*).

OBJECTIONS

As election-law scholar Richard L. Hasen recently noted in the *University of Chicago Law Review Online*, "for the most part" during the COVID-19 pandemic, "courts have been *unsympathetic* to the claims of *ballot measure proponents* even while other courts have granted relief to minor political parties and candidates who also need to remain on the ballot."

*See* Richard L. Hasen, "Direct Democracy Denied", U.Chi. L.R. Online (June 26, 2020) (italics added), *available at* https://lawreviewblog.uchicago.edu/2020/06/26/pandemic-initiative-hasen/ (last visited July 13, 2020). *See also Bambenek v. White*, __ F.Supp.3d __, No. 3:20-cv-3107, 2020 WL 2123951, at *2 (C.D. Ill. May 1, 2020) (distinguishing constitutional challenge based on barriers to "placing *candidates* on the ballot" from that based on "placing a *proposed constitutional amendment and various referenda* on the ballot") (italics added).

*Second*, a proponent of a statewide ballot initiative has 75 more days to gather signatures than an independent Presidential candidate.

Specifically, signatures for a statewide ballot initiative must be gathered within **180 days** (Cal. Elections Code §9014), while signatures for an independent Presidential candidate must be gathered within **105 days** (Cal. Elections Code §8404 & §8400) (signatures to qualify as an independent Presidential candidate must be gathered between the 193rd day and 88th day before the Nov. 3, 2020 Presidential election).

*Finally*, given that petitions for each of the initiatives at issue were first filed with

OBJECTIONS

| | |
|---|---|
| | county election officials in **Apr.** or **May 2020,** the 180-day window for each of the initiatives at issue began *before* the Governor's Mar. 2020 Stay-at-Home Order was issued.  *See* Exhs. 5-8 (listing date on which initiative petition was filed with each of the 58 counties).<br><br>*See Libertarian Party of Ill. v. Pritzker*, Civ. No. 1:20-cv-2112, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020) (reducing signature requirement by 90 percent, where the short "window" for gathering signatures had begun "at nearly the *same time*" that the Governor "first imposed" shelter-in-place restrictions) (italics added);[2] *Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018 (D. Nev. May 29, 2020), at *15 ("Plaintiffs were *prohibited from collecting signatures* during [Nevada's Stay at Home Order], so it is both unreasonable and unfair not to extend a statutory deadline for a corresponding period of time.") (italics added).[3] |
| **3.  Decl. of Rachelle Delucchi, Exh. 2** ("[g]uidance issued by the Secretary of State relating to notary services *during the pandemic and shelter-in-place orders*")[4] | *Relevance* [FRE 401].  The availability of notary services is not relevant as a matter of law.<br><br>The availability of notary services would be relevant only if three circumstances apply.  *First*, an independent candidate must mount a *mail campaign* to qualify |

---

[2]      *See also Common Sense Party v. Padilla*, 2020 WL 3491041, at *8 (distinguishing *Libertarian Party of Ill. v. Pritzker* on the ground that the "*short window* for gathering signatures [in *Pritzker*] only first opened at *approximately the same time* state COVID-19 restrictions were imposed.") (italics added)).

[3]      Plaintiffs also wish to apprise the Court that nearly two weeks ago, a California court granted relief to proponents of a statewide initiative whose 180-day window began *before* the Governor's Stay-at-Home Order was issued).  *Macarro v. Padilla*, No. 34-2020-80003404 (Sacramento County Super. Ct. July 2, 2020) (copy of ruling *attached as* **Exhibit A**).

[4]      Delucchi Decl. ¶4 (italics added).

for the Presidential ballot – because any notarized nomination papers would have to be physically returned to the candidate's campaign office before being filed with the appropriate elections official.

*Second*, a mail campaign would need to overcome immediate, practical barriers. Namely, "due to the closure of most public places, [voters] may have limited access to the Internet or a printer, or *may even be wary of opening mailed petitions*." *Pritzker*, 2020 WL 1951687 (italics added).

*Finally* – and assuming that voters are *not* "wary of *close physical contact*" during the pandemic[5] – any available notary public must comply with strict, safety requirements keeping *six feet apart* from anyone who signs nomination papers in his or her presence. Tellingly, neither the Secretary of State nor the Governor provides any evidence that notary publics are complying with – or are even *able* to comply with – the six-foot safety mandate.

As *Esshaki* admonished, "*suddenly requir[ing]* [a] mail-only signature campaign is far more than an incidental expense or reasonable regulatory requirement."[6] Accordingly, *Esshaki* expressly held that that the constitutional rights of the candidates seeking ballot access would be violated, *even if* it were possible for those candidates to "suddenly" mount a mail campaign pandemic.

Here, a candidate cannot be "suddenly required" to mount a mail campaign

---

[5]      *See Cooper v. Raffensperger*, __ F.3d __, No. 1:20-CV-01312-ELR, 2020 WL 3892454, at *6 (N.D. Ga. July 9, 2020) (italics added).

[6]      *Esshaki*, 2020 WL 1910154, at *6 (italics added).

OBJECTIONS

amidst the COVID-19 pandemic, and Defendants have provided no evidence that notary publics are complying with – or are even *able* to comply with – the six-foot safety mandate.  Accordingly, the availability of notary services is not relevant as a matter of law.[7]

DATED:  July 14, 2020

BUSINESS, ENERGY, AND ELECTION LAW, PC

By:  /s/ Gautam Dutta
         GAUTAM DUTTA, ESQ.

Attorneys for Plaintiffs
DONALD BLANKENSHIP and
DENISE PURSCHE

---

[7]     *See id.* at *6.

OBJECTIONS

# EXHIBIT A

Objections to Declaration of

Rachelle Delucchi

## SUPERIOR COURT OF CALIFORNIA

### COUNTY OF SACRAMENTO

| DATE / TIME | July 2, 2020 / 1:30 p.m. | DEPT. NO. | 17 |
|---|---|---|---|
| JUDGE | James P. Arguelles | CLERK | Slort |

| | |
|---|---|
| MARK MACARRO et al., <br><br> Petitioners, <br><br> v. <br><br> ALEX PADIILA, in his official capacity as Secretary of State of the State of California, <br><br> Respondent. | Case No.: 34-2020-80003404 <br><br> *[Related Case No. 34-2020-80003413]* |

| Nature of Proceedings: | Petition for Writ of Mandate – Final Ruling |
|---|---|

The petition is GRANTED.

Petitioners' request for judicial notice (RJN) of official records is GRANTED.

### Background

Petitioners propose an initiative measure to amend the California Constitution and enact related statutory provisions. The initiative, entitled the California Sports Wagering Regulation and Unlawful Gambling Enforcement Act, would legalize sports wagering at tribal casinos and existing horse racetracks. It would also fund problem gaming and mental health research programs, bar wagering on high school athletics, limit wagering at racetracks to those 21 years of age and older, and prohibit the advertising or marketing of sports wagering to persons under 21.

To qualify their initiative for the ballot, Petitioners must circulate petitions and obtain a minimum number of registered voters' signatures. At this time, the minimum number of qualifying signatures for a constitutional amendment is 997,139, which is eight percent of all votes cast in the last gubernatorial election. (See Cal. Const., art. II, § 8(b); Paparella Decl., ¶ 7.)

Because election officials always reject some signatures as invalid for various reasons, (Paparella Decl., ¶ 8), Petitioners plan to collect and submit a surplus of signatures.[1]

California voters may not sign an initiative petition electronically. (See Elec. Code §§ 354.5, 9020.) Instead, individuals acting as circulators of petitions must personally attest that they witnessed each voter affix a signature. (See § 9022.) As a result, the process of gathering signatures is essentially a face-to-face process requiring close proximity between circulators and voters. (Paparella Decl., ¶ 14.) Distributing petitions by mail or email is theoretically possible but is either prohibitively expensive (in the case of regular mail) or unreliable (in the case of email.) (See id., ¶ 24.) Circulators typically gather signatures near businesses, public events and other places where crowds gather. (Id., ¶ 14.)

Pursuant to Section 9004, Petitioners in this case received an "official summary date" of January 21, 2020. Petitioners are required to submit the requisite number of signatures within 180 days of the official summary date, which is July 20, 2020. (See § 9014(b).) Existing state law does not authorize extensions. (See id., §§ 9014-9015.)

Between January 21 and mid-March of this year, Petitioners obtained approximately 971,000 signatures in support of their initiative. (Paparella Decl., ¶ 10.) Petitioners spent over $7 million in this effort. (Id.) On March 16, 2020, however, several counties in the Bay Area responded to the Covid-19 pandemic by ordering residents to shelter in place. (Id., ¶ 11.) Three days later, Governor Newsom and the State Public Health Officer ordered all residents in the state to shelter in place, i.e., stay home or at another place of residence. (See RJN, Exhs. A, D.) Although the shelter-in-place directives contained exceptions for services deemed essential, political petitioning such as Petitioners' did not fall within the exceptions. (See id., Exh. D.) Consequently, the in-person signature gathering in which Petitioners were engaged came to a halt.

---

[1] Petitioners' original goal was to gather 1.6 million signatures. That figure was selected with the hope of qualifying expeditiously for the November 2020 ballot via the random sampling method described in Elections Code section 9030. (Undesignated statutory references will be to the Elections Code.) Under that section, if a random sample shows that 110% of the minimum number of qualifying signatures was collected, then the initiative qualifies for the ballot without further signature certification. At this time, 110% of the minimum qualifying number amounts to 1,096,853 signatures. (Paparella Decl., ¶ 8.) Throughout the instant proceeding, Petitioners have asserted that, due to shelter-in-place and social-distancing requirements associated with the Covid-19 pandemic, they will not obtain enough signatures to qualify in this manner for the November 2020 ballot. Petitioners' new plan is to qualify their initiative for the November 2022 ballot. (See § 9017 [failure to submit a proposed initiative to the voters at the next election does not bar submission at a subsequent election].) Petitioners no longer plan on qualifying with a random sample disclosing 110% of the required number of qualifying signatures. (See § 9031 [if random sampling discloses between 95% and 110% of the required number of qualifying signatures, then county election officials must review and certify each signature submitted].) As a result, Petitioners now estimate that they need to secure 1.4 million signatures before submitting them to election officials. (See Paparella Decl., ¶ 8.)

The Executive Branch subsequently announced a four-stage plan to re-open businesses and gradually ease shelter-in-place rules. In an order dated May 7, 2020, the State Public Health Officer authorized, but did not require, all counties to move to "stage 2," which allowed designated "lower risk" workplaces and other spaces to re-open subject to mandatory social distancing and hygiene measures. (RJN, Exh. E.) The May 7 also order authorized eligible counties to open some additional low-risk businesses ("expanded stage 2"). Nonetheless, the order affirmed: "[t]o the extent that such sectors are re-opened, Californians may leave their homes to work at, patronize or otherwise engage with those businesses, establishments or activities and must, when they do so, continue at all times to practice physical distancing … [the] March 19, 2020 Order otherwise remains in full effect." (Id.)

Most, but not all, counties moved to expanded stage 2 in May 2020. On June 5, 2020, the Executive Branch issued guidelines for possible transition to stage 3, i.e., re-opening of higher-risk businesses, beginning June 12, 2020. (See Opening Brf. at 10:9-10.) Around the same time, the state's Covid-19 website was updated to indicate under "How Do I vote?" that permissible activities included "the collection of signatures to qualify candidates or measures for the ballot." (Id. at 10, fn. 2.) The same update cautioned people to adhere to physical distancing.

Since stage-2 of the re-opening plan, Petitioners have collected signatures roughly at a rate of 10 percent the rate they gathered signatures between January 21 and mid-March 2020. (Paparella Decl., ¶ 25.) Large public venues remain closed, and many voters whom Petitioners' circulators attempt to engage elsewhere refuse to interact. In addition, because several county elections offices have been closed to the public, Petitioners have been unable to inspect many of the voter files typically used to ensure a favorable validity rate for signatures gathered. (Id., ¶ 22.) Also, far fewer persons are willing to act as circulators. (Id., ¶ 23.)

Petitioners assert that local and statewide stay-at-home and social-distancing orders have prevented them from gathering enough signatures to qualify the initiative for the November 2020 ballot. This is so because the deadline to qualify is 131 days before the election (which was June 24, 2020 for the upcoming election). (Cal Const., art. II, § 8(c).) Nonetheless, if Petitioners gather enough signatures within the 180-day period ending on July 20, 2020, they can still qualify the initiative for the November 2022 ballot. (See § 9017.) But Petitioners assert that, despite their efforts, they are unlikely secure enough signatures before July 20, 2020.

Petitioners filed the instant action on June 9, 2020. Pursuant to Code of Civil Procedure section 1085 and Elections Code section 13314, Petitioners seek a peremptory writ of mandate extending the 180-day period for at least 90 days. In the alternative, they seek a writ enjoining Respondent Alex Padilla, in his capacity as the California Secretary of State, (Respondent) to suspend the 180-day period for a period beginning March 19, 2020 through the point at which all counties in the state have been authorized to move to stage 3 of the re-opening guidelines.

Given the July 20, 2020 deadline facing Petitioners, the court set a merits hearing on an expedited briefing schedule. The parties agreed that such a schedule was appropriate under

the circumstances.  The parties also agreed that county election officials were not necessary parties.

There is no opposition from Respondent.[2]

By order dated June 30, 2020, this case was related to Case No. 34-2020-80003413.

Legal Authority for Writ Relief

"Code of Civil Procedure section 1085 declares that a writ may be issued 'by any court … to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station … .' The availability of writ relief to compel a public agency to perform an act prescribed by law has long been recognized. [Citation.]

"What is required to obtain writ relief is a showing by a petitioner of '(1) A clear, present and usually ministerial duty on the part of the respondent … ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty … .' [Citation.] Mandamus is available to compel a public agency's performance or correct an agency's abuse of discretion whether the action being compelled or corrected can itself be characterized as 'ministerial' or 'legislative[.]'" [Citation.]

(*Mission Hosp. Reg'l Med. Ctr. v. Shewry* (2008) 168 Cal.App.4th 460, 478-479, underlining omitted.)

In addition, Section 13314(a) provides:

(1) An elector may seek a writ of mandate alleging that an error or omission has occurred, or is about to occur, in the placing of a name on, or in the printing of, a ballot, county voter information guide, state voter information guide, or other official matter, or that any neglect of duty has occurred, or is about to occur.

(2) A peremptory writ of mandate shall issue only upon proof of both of the following:

(A) That the error, omission, or neglect is in violation of this code or the Constitution.

---

[2] The court directed Respondent to file any opposition by June 29, 2020.  On June 30, Respondent's counsel informed the court that the attorney assigned to this matter had experienced a personal emergency on June 29.  Respondent's counsel subsequently filed a statement indicating that Respondent would not be filing an opposition brief and would attempt instead to negotiate a stipulation and order granting the petition.  The court received a stipulation and order on July 1, 2020, but rejected the stipulation for reasons discussed during the hearing.

Page 4 of 8

(B) That issuance of the writ will not substantially interfere with the conduct of the election.

(3) The action or appeal shall have priority over all other civil matters.

(4) The Secretary of State shall be named as a respondent or a real party in interest in any proceeding under this section concerning a measure or a candidate described in Section 15375,[3] except for a candidate for judge of the superior court.

<u>Discussion</u>

Petitioners have established that an order extending the 180-day deadline in Section 9014(b) will not interfere with any election.  Petitioners no longer wish to qualify their initiative for the November 2020 ballot, and the evidence before the court does not disclose any threat to an election.

Petitioners have also established that a constitutional violation will occur absent an order extending the 180-day deadline.

The right of initiative is among the most precious rights in the California democratic process, and courts must guard it jealously for the people.  (See *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1168.)  Where, as here, a state authorizes initiative measures, state action burdening that authority implicates free speech and petitioning activity guaranteed under the First Amendment to the Federal Constitution:

> The [United States] Supreme Court has identified at least two ways in which restrictions on the initiative process can severely burden "core political speech." *Meyer v. Grant*, 486 U.S. 414, 422, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988). First, regulations can restrict one-on-one communication between petition circulators and voters. *See id.* at 422-23. Second, regulations can make it less likely that proponents will be able to garner the signatures necessary to place an initiative on the ballot, "thus limiting their ability to make the matter the focus of statewide discussion." *Id.* at 423.

(*Angle v. Miller* (9th Cir. 2012) 673 F.3d 1122, 1132, underlining omitted.)  In the context of restrictions on ballot initiatives, the *Angle* court determined that strict judicial scrutiny applies where (1) the proponents have been reasonably diligent as compared to other initiative proponents, and (2) the restrictions significantly inhibit the proponents' ability to place the initiative on the ballot.  (673 F.3d at 1133; see also *Fair Maps Nevada v. Cegavske* [*Fair Maps*] (D. Nev. 2020, May 29, 2020) 2020 U.S. Dist. LEXIS 94696, *31 [following *Angle*].)  To survive strict scrutiny, the restrictions must advance an overriding state interest and must be narrowly

---

[3] Section 15375 requires elections officials to "send to the Secretary of State within 31 days of the election ... one compete copy of all results as to all of the following: [¶¶] (e) All statewide measures."

Page 5 of 8

drawn to avoid unnecessary intrusion on First Amendment rights. (*See Planning & Conservation League, Inc. v. Lungren* (1995) 38 Cal.App.4th 497, 507.)

The recent decision in *Fair Maps* involved facts similar to those at bench. Before the Covid-19 pandemic arose, the plaintiffs in *Fair Maps* filed an initiative petition to amend the Nevada Constitution. (2020 U.S. Dist. LEXIS 94696, *8-9.) They began gathering signatures in early 2020, but stay-at-home and other public-health orders halted their efforts. (*Id.* at *9-10.) The plaintiffs asked the Nevada Secretary of State (1) to extend the statutory deadline on their signature gathering and (2) to waive statutory requirements on their circulators personally to sign the petitions and observe voters affixing signatures. The Secretary declined on the ground that she lacked authority to take the requested actions.

The *Fair Maps* plaintiffs then brought an as-applied First Amendment challenge to the deadline and circulator requirements. (*Id.* at *27.) On plaintiffs' motion for a preliminary injunction, the district court applied strict scrutiny. The court concluded that, given the stay-at-home orders issued in response to Covid-19, Nevada's statutory deadline on signature gathering did not advance a compelling interest. The deadline was not constitutionally required and, at most, would severely inconvenience election officials trying to prepare for the upcoming election. The avoidance of severe inconvenience was not a compelling interest given that, without an extension, the plaintiffs would be unable to place their initiative on the next ballot. (See *id.* at *42-43.) Similarly, the deadline was not narrowly tailored because election officials could perform all their pre-election work even with an extension. Although the court did not impose an extension, it assumed that its ruling would cause the statutory deadline to revert to an extended deadline under the Nevada constitution, or that the parties would stipulate to another accommodation. Elsewhere the court found that Nevada's in-person circulator requirements survived strict scrutiny because they were narrowly tailored to the compelling state interest in preventing voter fraud. (*Id.* at *47.)

Like the plaintiffs in *Fair Maps*, Petitioners in the instant case have established circumstances warranting the application of strict scrutiny. Compared with other proponents of initiatives, Petitioners have been reasonably diligent – if not extremely diligent – in gathering signatures during the 180-day period. (See Paparella Decl., ¶ 26.) In addition, despite Petitioners' diligence, the 180-day deadline coupled with Executive Branch orders responding to the Covid-19 pandemic significantly inhibits Petitioners' ability to place their initiative on the November 2022 ballot.

Citing the legislative history of statutory deadlines on signature gathering for California initiatives, Petitioners argue that the 180-day deadline in Section 9014(b) does not serve any compelling state interest. The deadline is not constitutionally prescribed. Nonetheless, the court need not decide whether the deadline advances any compelling state interest, since the deadline is not narrowly tailored (i.e., is unduly restrictive) when applied to current circumstances. To avoid a First Amendment violation, the 180-day deadline must be extended.

Petitioners propose alternative remedies. On the one hand, they suggest extending the July 20, 2020 deadline to an unspecified date when all counties have moved to stage 3 re-opening. The court will not order such an indefinite extension.

On the other hand, Petitioners propose a 90-day extension to account for time within the 180-day period in which official shelter-in-place and social-distancing orders have impeded their efforts to gather signatures. Between March 19, 2020 and May 7, 2020, Petitioners were virtually if not literally barred from collecting any signatures to support their initiative. The court has no trouble ordering an extension of the 180-day period by an equivalent period of 49 days. That moves the deadline to submit signatures under Section 9014(b) to September 7, 2020.

The remaining question is whether to extend the deadline further to account for government restrictions impeding Petitioners' activities since re-opening began on May 7. Between May 7 and June 18, Petitioners gathered signatures at approximately 10 percent their prior rate and notwithstanding their diligent efforts. The court finds that the rate reduction is the result of government restrictions responding to the Covid-19 pandemic. To make Petitioners whole, the court will order a further extension equal to 90 percent of the same time period, or 35 additional days. This further extension moves the deadline to submit signatures to October 12, 2020.

The court will not order a further extension at this time. The degree to which official Covid-19 restrictions will thwart Petitioners' ability going forward to qualify their initiative for the November 2022 ballot is speculative, and the court will not move the deadline absent a showing that a constitutional violation is likely to occur. The court, however, will retain jurisdiction in this matter so that the parties may seek further judicial relief without having to file a new case.

Disposition

The petition is granted.

For the reasons above, the July 20, 2020 deadline by which Petitioners must submit signatures to support the initiative is HEREBY ORDERED EXTENDED to and including October 12, 2020. Respondent shall abide by the new deadline.

The court shall retain jurisdiction in this matter.

Pursuant to Cal. Rule of Court 3.1312, counsel for Petitioners shall lodge for the court's

///

signature a judgment to which this ruling is attached as an exhibit.

SO ORDERED.

Dated:   July 2, 2020



Hon. James P. Arguelles
California Superior Court Judge,
County of Sacramento

## CERTIFICATE OF SERVICE BY MAILING
### (C.C.P. Sec. 1013a(4))

I, the undersigned deputy clerk of the Superior Court of California, County of Sacramento, do declare under penalty of perjury that I did this date place a copy of the above entitled **Petition for Writ of Mandate – Final Ruling** in envelopes addressed to each of the parties, or their counsel of record as stated below, with sufficient postage affixed thereto and deposited the same in the United States Post Office at Sacramento, California.

Deborah B. Caplan
Lance H. Olson
Emily A. Andrews
OLSON REMCHO LLP
555 Capitol Mall, Suite 1425
Sacramento, CA 95814

Email: dcaplan@olsonremcho.com

James C. Harrison
OLSON REMCHO, LLP
1901 Harrison Street, Suite 1550
Oakland, CA 94612

Email: jharrison@olsonremcho.com

Dated: July 2, 2020

Steven Reyes, Chief Counsel
Secretary of State
1500 11th Street, 6th Floor
Sacramento, CA 95814

Email: steve.reyes@sos.ca.gov

Gabrielle D. Boutin, DAG
California Department of Justice
P.O. Box 944255
Sacramento, CA 94244-2550

Email: Gabrielle.Boutin@doj.ca.gov

Superior Court of California,
County of Sacramento

By:   S. Slort
      Deputy Clerk