GAUTAM DUTTA (State Bar No. 199326)
BUSINESS, ENERGY, AND ELECTION LAW, PC
1017 El Camino Real # 504
Redwood City, CA  94063
Telephone:  415.236.2048
Email:  Dutta@BEELawFirm.com
Fax:  213.405.2416

Attorneys for Plaintiffs
DONALD BLANKENSHIP and DENISE PURSCHE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD BLANKENSHIP and DENISE PURSCHE<br><br>*Plaintiffs*,<br><br>vs.<br><br>GAVIN NEWSOM, in only his official capacity as Governor of California; and ALEX PADILLA, in only his official capacity as Secretary of State of California;<br><br>*Defendants*. | CASE NO. 3:20-cv-04479-RS<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL (BUT INAPPOSITE) AUTHORITY IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND / OR PRELIMINARY INJUNCTION**<br><br>JUDGE:  Hon. Richard Seeborg<br><br>Hearing Date:  Aug. 5, 2020, 10 am |

TO THE COURT, THE PARTIES, AND THEIR COUNSEL:

*Please take notice* of the following supplemental – but inapposite – authority that Defendants will likely raise in connection with Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction:  *Joseph Kishore v. Gavin Newsom*, No. 2:20-cv-05859 (C.D. Cal. July 20, 2020), *attached as* **Exhibit A.**

*Kishore* denied an independent Presidential candidate's request to enjoin California's ballot-access requirements for the Nov. 3, 2020 election.

Although it addressed a similar set of legal issues, *Kishore* is distinguishable from Mr. Blankenship and Ms. Pursche's case in three significant ways.  *First*, *Kishore* neither cited nor

distinguished much of the on-point precedent that was discussed by Mr. Blankenship and Ms. Pursche – including but not limited to:

1. *Libertarian Party of Ill. v. Pritzker*, Civ. No. 1:20-cv-2112, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020) (slashing the number of signatures required for minor-party and independent candidates by **90 percent,** in the wake of the COVID-19 public-health emergency);

2. *The Constitution Party of Virginia v. Virginia State Bd. of Elections*, No. 3:20-cv-00349-JAG (E.D. Va. July 15, 2020) (reducing the number of signatures required for minor-party and independent Presidential candidates from 5,000 to 2,500, in the wake of the COVID-19 public-health emergency);

3. *Cooper v. Raffensperger*, __ F.Supp.3d __, No. 1:20-CV-01312-ELR, 2020 WL 3892454, at *2, *9 (N.D. Ga. July 9, 2020) (reducing the signature requirement for independent Presidential candidates by 30 percent, from 7,500 signatures to 5,250 signatures, in the wake of the COVID-19 public-health emergency);

4. *Garbett v. Herbert*, No. 2:20-cv-00245-RJS, 2020 WL 2064101 (D. Utah Apr. 29, 2020) (reducing gubernatorial candidate's signature requirement by 32 percent, even though she had had the opportunity to gather signatures *before* the state's shelter-in-place order was issued);

5. *Goldstein v. Sec'y of the Commonwealth*, 142 N.E.3d 560, 575 (Mass. 2020) (easing requirements for Democratic and Republic candidates seeking to appear on the ballot, in the wake of the COVID-19 public-health emergency);

6. *Fla. Democratic Party v. Scott*, 215 F.Supp.3d 1250, 1257-58 (N.D. Fla. 2016) (in the wake of Hurricane Matthew, extending deadline to register to vote for the 2016 Presidential election); and

7. *Jones v. McGuffage*, 921 F.Supp.2d 888, 899 (N.D. Ill. 2013) (in special election, reducing statutory signature-gathering requirements during the peak of Chicago's bone-chilling winter).

*Second*, although it held that a candidate *lacks* the constitutional right to access the Presidential ballot in the manner that he or she chooses,[1] *Kishore* neither discussed nor distinguished a critical holding from *Esshaki v. Whitmer* – where the court, invoking a chain of on-point precedent, held to the *contrary*.[2]

*Finally*, the *Kishore* court gave weight to *Thompson v. DeWine*[3] and the unpublished *Common Sense Party v. Padilla*.[4]  However, as our Reply showed, both cases are inapplicable.[5]

Accordingly, *Kishore* is inapposite to Mr. Blankenship's and Ms. Pursche's case.

DATED:  July 22, 2020

BUSINESS, ENERGY, AND ELECTION LAW, PC


By:  /s/ Gautam Dutta

GAUTAM DUTTA, ESQ.

Attorneys for Plaintiffs

DONALD BLANKENSHIP and

DENISE PURSCHE

---

[1]   *Kishore*, No. 2:20-cv-05859, at 5 (relief denied because, *inter alia*, candidate could have also run as a write-in candidate or the nominee of a "minor" party).  *Cf. De La Fuente v. Padilla*, 930 F.3d 1101, 1195 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 676 (2019) (holding that California's ballot-access requirements do not violate the constitutional rights of independent Presidential candidates under non-pandemic circumstances).

[2]   *Esshaki v. Whitmer*, __ F.Supp.3d __, 2:20-CV-10831-TGB, 2020 WL 1910154 (E.D. Mich. Apr. 20, 2020), at *6 (rejecting government's argument that no constitutional violation could occur where candidates seeking to have their names appear on the ballot could access the ballot as *write-in* candidates) (*citing Lubin v. Panish*, 415 U.S. 709, 719 n.5 (1974); *Anderson v. Celebrezze*, 460 U.S. 780, 799 n.26 (1983); *Graveline v. Johnson*, 336 F.Supp.3d 801, 811 (E.D. Mich. 2018)), *aff'd in relevant part*, __ Fed. Appx. __, No. 20-1336, 2020 WL 218553 (6th Cir. May 5, 2020).

[3]   *Thompson v. DeWine*, 959 F.3d 804, 809-10 (6th Cir. 2020).

[4]   *Common Sense Party v. Padilla*, No. 2:20-cv-01091-MCE-EFB, 2020 WL 3491041, at *3 (E.D. Cal. June 26, 2020).

[5]   *See* Plaintiffs' July 14, 2020 Reply (Dkt. No. 15), at 4:2-5:14.

# EXHIBIT A

# Notice of Supplemental (But Inapposite) Authority

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 1 of 12 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [11]**

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Joseph Kishore and Norissa Santa Cruz seek a preliminary injunction: (1) preventing the State of California from enforcing its requirement that independent candidates for president and vice president of the United States obtain a certain number of signatures before they may appear on the general election ballot; and (2) requiring California to place them on the general election ballot or institute new, more lenient, ballot access measures that Plaintiffs could satisfy. *See* Compl. [Doc. # 1]. After considering two Applications for a Temporary Restraining Order ("TRO") filed by Plaintiffs, the Court declined to issue a TRO, and instead construed Plaintiff's second TRO Application as a Motion for Preliminary Injunction ("MPI") so that Defendants Gavin Newsom and Alex Padilla could have additional time to file a proper response.[1] Order re TRO Application 2 [Doc. # 13]. The matter is now fully briefed and the Court held a videoconference hearing on July 20, 2020. Opp. [Doc. # 16]; Reply [Doc. # 20]. The facts underlying Plaintiff's MPI are as follows.

Kishore and Santa Cruz are the Socialist Equality Party's candidates for president and vice president of the United States. Kishore Decl. at ¶ 1 [Doc. # 11-2]; Santa Cruz Decl. at ¶ 1 [Doc. # 11-3]. In January 2020, Plaintiffs filed their statement of candidacy with the Federal Election Commission and publicly announced their candidacy on the World Socialist Web Site, a prominent socialist online publication. Kishore Decl. at ¶ 3.

In California, independent candidates for President and Vice President of the United States may appear on the general election ballot if they are able to collect "nomination papers" signed by at least one percent of the number of voters registered during the previous general election. Cal.

---

[1] Plaintiffs have sued Newsom and Padilla in their official capacities as the Governor of California and Secretary of State of California, respectively. *See* Compl.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|

| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 2 of 12 |
|---|---|---|---|

Elec. Code §§ 8400, 8303, 8304. For this election cycle, such candidates must collect at least 196,964 signatures from registered voters. Delucchi Decl., Ex. 1 ("Nomination Requirements") at 2-3. The candidates must collect and submit the signatures within a 105-day period, which runs in this case from April 24, 2020 to August 7, 2020. Cal. Elec. Code § 8403.

Plaintiffs claim that they always intended to meet this requirement, and were confident that they could do so. Their campaign staff organized a "series of in-person meetings in Michigan and California to launch the campaign." *Id.* They held events at the University of Michigan and at Wayne State University in late February 2020, and their "campaign staff promoted these events widely at both campuses and also at workplaces and public locations in the surrounding areas." *Id.* In the first week of March, Kishore made campaign stops in Berkeley, Santa Cruz, Los Angeles, and San Diego, California. *Id.* at ¶ 4.

After the California campaign stops, Plaintiffs' campaign "decided to cancel all subsequent public events and campaign activity, including ballot gathering initiatives, in order to protect volunteers, staff and the public at large from spreading the coronavirus." *Id.* at ¶ 5. The decision to cease campaign activity prevented Plaintiffs from pursuing a strategy of "aggressive" campaigning in California "later in the spring and summer." *Id.*

Their decision to suspend campaign activity took place around the same time that Governor Newsom, on March 4, 2020, declared a state of emergency in California to allow state agencies to better prepare for and combat the spreading coronavirus pandemic. Chang Decl., Ex. 2 [Doc. # 17-2]. The Governor then issued a statewide "stay-at-home" order on March 19, 2020. *Id.* The March 19, 2020 order stated that Californians working in 16 areas identified by the United States Department of Homeland Security ("DHS") as critical, or "essential," could continue their work despite the order. *Id.*; Chang Decl., Ex. 4 [Doc. # 17-4]. DHS's guidance included as one category of essential workers "[e]lections personnel to include both public and private sector elections support." Chang Decl., Ex. 4 at 13. While the DHS guidance itself stated that the list of essential workers is intended to be "advisory in nature" and should not be considered "a federal directive," *id.* at 2, Governor Newsom's "order[ed]" that individuals working in the 16 essential areas may continue to work during the duration of the stay-at-home order. Chang Decl., Ex. 2 at 2-3. California's State Public Health Officer also explicitly designated "[e]lections personnel" as essential workers in a separate order. Chang Decl., Ex. 5 at 11 [Doc. # 17-5].

As of May 1 and June 5, 2020, the "Stay home Q&A" page of California's website containing information about the pandemic stated "the collection and dropoff of ballots" and "election-related activities" are "essential activit[ies]." Quirarte Decl. at ¶¶ 5, 9 [Doc. # 18]. On

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 3 of 12 |

June 5, the website added language to further clarify that "the collection of signatures to qualify candidates or measures for the ballot" also are "essential activit[ies]." *Id*. at ¶ 9.

Plaintiffs claim that these orders and recommendations from State and local officials "underscore the fact that had Plaintiffs and their supporters attempted to publicly petition to obtain signatures for ballot access, they would have severely jeopardized not only their own health and lives, but those of the public as well." MPI at 8 [Doc. # 11]. Rather than take those risks, Plaintiffs chose not to collect signatures. Santa Cruz Decl. at ¶¶ 12-13. Indeed, to date, Plaintiffs have gathered none. Compl. at ¶ 32.

## II.
## LEGAL STANDARD

Litigants seeking preliminary injunctive relief must show that: (1) they are likely to succeed on the merits of their claim; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). When the government is a party, "these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Normally, a preliminary injunction is also appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in the plaintiff's favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). But Plaintiffs seeking a mandatory, as opposed to a prohibitory, injunction, must carry a "doubly demanding burden." *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015). They must demonstrate "that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Id.* In the Ninth Circuit, mandatory injunctions are "particularly disfavored." *Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

## III.
## DISCUSSION

Plaintiffs argue that California should permit them to appear on the general election ballot because enforcing the statutory signature requirement in light of the pandemic and the state's response to it would be a violation of their First and Fourteenth Amendment rights to ballot access.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | ***Joseph Kishore, et al. v. Gavin Newsom, et al.*** | Page | 4 of 12 |

*See* MPI.Compl. at ¶¶ 40-42. The legal framework for analyzing constitutional challenges to state election regulations is well established.

When considering when a state election regulation violates a constitutional right, courts "must weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 351 (1997). Election laws that "impose a severe burden on associational rights are subject to strict scrutiny," and courts should uphold them "only if they are narrowly tailored to serve a compelling state interest." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008). If the state law "imposes only modest burdens, however, then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions' on election procedures." *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). To determine the weight of the burden that an election regulation places on a candidate seeking ballot access, courts in the Ninth Circuit should examine "whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008).

The Ninth Circuit has "repeatedly upheld as 'not severe' restrictions that are generally applicable, evenhanded, politically neutral, and protect the reliability and integrity of the election process." *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016). Indeed, "voting regulations are rarely subject to strict scrutiny." *Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013). Nonetheless, restrictions that "significantly impair access to the ballot" are considered "severe." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1015 (9th Cir. 2002).

**A.      The Burden on Plaintiffs is Less Than Severe**

The Court must first determine whether Plaintiffs have shown that the "law and the facts clearly favor their position" that even a "reasonably diligent" candidate would rarely succeed in gaining access to the ballot under the current circumstances. *Garcia,* 786 F.3d at 740; *Nader*, 531 F.3d at 1035. They have not.

Under *Nader*, courts gauge diligence "in light of the *entire statutory scheme* regulating ballot access." *Nader*, 531 F.3d at 1035 (emphasis added). While Plaintiffs focus on the signature requirement for independent candidates discussed above, gathering signatures does not appear to be the only statutory avenue for a non-major party candidate to appear on the general election ballot. *De La Fuente v. Padilla*, 930 F.3d 1101, 1105 (9th Cir.), *cert. denied*, 140 S. Ct. 676 (2019)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 5 of 12 |

("Non-major party candidates can access California's ballot in three ways: as minor party candidates, write-in candidates, or independent candidates: as minor party candidates, write-in candidates, or independent candidates."). California's Election Code also provides that "[a] party is qualified to participate in a presidential general election" if:

> on or before the 102nd day before a presidential general election, it appears to the Secretary of State, as a result of examining and totaling the statement of voters and their declared political preference transmitted to him or her by the county elections officials, that voters equal in number to at least 0.33 percent of the total number of voters registered on the 123rd day before the presidential general election have declared their preference for that party.

Cal. Elec. Code § 5151(c)(1). To meet this so-called qualification requirement, Plaintiffs would have to demonstrate that about 68,000 Californians have registered as Socialist Equality Party voters. *See Common Sense Party v. Padilla*, 2020 WL 3491041, at *2 (E.D. Cal. June 26, 2020). Since the general election will take place on November 3, 2020, the deadline for demonstrating sufficient voter registrations is July 24, 2020.

There are many ways to drum up voter registration, several of which do not require in-person contact, appearing in public, leaving the home, or the use of the mails, which Plaintiffs decry as prohibitively expensive. *See* Reply at 10-11 (estimating that it would cost about $20 million to collect the necessary number of signatures through a mail-only effort). As the Court in *Common Sense* explained:

> Political bodies also may solicit voter registration through the internet in various ways. Through efforts similar to sending voter-registration cards through the mail, political bodies may send links to the Secretary of State's voter-registration page in targeted emails to persons who request them, or in unsolicited mass emails. . . . For example, a political body may send unsolicited mass emails that ask people to register to vote, or to re-register to indicate a preference for that political body with a link to the political body's own website, which may then have a link to the Secretary of State's voter-registration page.
>
> Finally, in addition to targeted and mass mailings and emails, political bodies may also use traditional and social media to communicate with voters or potential voters and to solicit those voters to register or re-register a preference for the political bodies.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | ***Joseph Kishore, et al. v. Gavin Newsom, et al.*** | Page | 6 of 12 |

*Common Sense*, 2020 WL 3491041, at *2. Plaintiffs in this case also appear to have a method of generating voter registration that the *Common Sense* plaintiffs did not—Kishore states that his "movement's publication, the World Socialist Web Site, is read by over 1.5 million people each month, with many thousands of daily readers in California." Kishore Decl. at ¶ 14.

Plaintiffs do not contend that they have attempted to gain ballot access under section 5151(c).[2] Nor do they respond to Defendants' contention that section 5151(c) ballot access would be a more attractive avenue for candidates who are understandably concerned about the health risks, and risk of violating California's stay-at-home order, associated with in-person campaigning during the coronavirus pandemic. *See* Opp. at 19. The Court therefore cannot know, based on the current record, whether a reasonably diligent candidate would normally succeed in gaining ballot access through section 5151(c) qualification, as opposed to in-person signature gathering under section 8400. Since Plaintiffs must show that the law and facts are clearly in their favor to succeed, their failure to pursue section 5151(c) ballot access indicates a lack of diligence.

Furthermore, Plaintiffs have not justified their delay in taking action to appear on the ballot despite the pandemic. As other courts in this circuit have held, months-long delays in filing for interim injunctive relief militate against the issuance of such relief. *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1097 (N.D. Cal. 2012). Plaintiffs claim that they suspended in-person campaign activities "shortly after" returning from campaign events in early March due to concerns relating to the pandemic. Kishore Decl. at ¶ 4. And they were plainly aware of Governor Newsom's executive orders in March that declared a state of emergency and mandated that non-essential workers remain in their homes. *See id.* at ¶¶ 6-8. Plaintiffs argue that California's initial guidance, which stated vaguely that "elections personnel" were essential workers, most likely referred to state employees working to facilitate elections rather than private campaign staff. But even assuming that is true, California clarified in early May and early June that "election-related activities" and signature gathering were essential activities exempted from the stay-at-home mandate.

Moreover, there is no evidence in the record that Plaintiffs ever reached out to any California election officials to seek guidance on how the pandemic and stay-at-home orders would impact their ballot-access efforts. Indeed, Plaintiffs concede that they "never saw any" of the online guidance to which Defendants refer "before they were attached to Defendants' opposition."

---

[2] The Court has not found any evidence in the record of how many people in California are registered as Socialist Equality Party voters.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk **KT** |
|---|---|---|

Case 2:20-cv-05859-DMG-E Document 22 Filed 07/20/20 Page 7 of 12 Page ID #:472
Case 3:20-cv-04479-RS Document 18 Filed 07/22/20 Page 11 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 7 of 12 |

Reply at 15. Instead, it appears that Plaintiffs took no action regarding their ability to appear on the general election ballot until they filed this lawsuit on June 30, 2020—more than three months after suspending campaign activity and more than two months after the signature gathering period began. These unexplained delays in protecting their ability to appear on the ballot also counsel against granting Plaintiffs' motion.

Additionally, the cases on which Plaintiffs rely to support their diligence argument are meaningfully distinguishable. Plaintiffs rest their argument primarily on the Sixth Circuit's unpublished opinion in *Esshaki*. . There a Michigan congressional candidate sued Michigan's governor, claiming that the "combination of the State's strict enforcement of the ballot-access provisions and the Stay-at-Home Orders imposed a severe burden on [his] ballot access." 2020 WL 2185553, at *1 Michigan's stay-at-home order made no exception for First Amendment activity and "remained in place through" the applicable signature submission deadline. *See Thompson v. Dewine*, 959 F.3d 804, 809 (6th Cir. 2020). The court ruled that, under those circumstances, Michigan's government effectively excluded the plaintiff from the congressional ballot by ensuring that he would not gather the required number of signatures before the deadline. *Esshaki*, 2020 WL 2185553, at *1.

In a later decision, the Sixth Circuit contrasted the Michigan order with its Ohio counterpart, which "specifically exempted conduct protected by the First Amendment from its stay-at-home orders," and permitted the plaintiffs to continue their ballot-access efforts. *Thompson*, 959 F.3d at 809. That distinction, according to the Sixth Circuit, was the difference between an executive order that "virtually exclude[d]" individuals from the ballot and one that did not. *Id.* But the *Thompson* court went a step further and reasoned that, even if Ohio's stay-at-home order operated to prevent the plaintiffs from engaging in First Amendment activity, the fact that Ohio rescinded the order five weeks before the applicable deadline "undermine[d the p]laintiffs' argument that the State has excluded them from the ballot." *Id.* at 810.

California's combination of ballot-access laws and stay-at-home guidance is more like Ohio's than Michigan's. Whereas Michigan's order did not designate election-related activities as essential, and therefore exempt from, its stay-at-home mandate, California's order and subsequent guidance arguably did so from the outset, and certainly did so by June 5, 2020.[3] *See Thompson*, 959 F.3d at 809; *Common Sense*, 2020 WL 3491041, at *8 (describing Michigan's stay-at-home order as "fundamentally dissimilar" to California's). Moreover, California began

---

[3] The Court acknowledges that, as discussed above, California's stay-at-home order may have initially caused some confusion about whether private election campaign staff were essential workers, or whether the "essential" designation applied only to state election employees. But California remedied any such confusion by June 5, 2020 at the latest. At that point, it was clear that the state considered ballot-access-related campaign activity essential.

Case 3:20-cv-04479-RS Document 18 Filed 07/22/20 Page 12 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | ***Joseph Kishore, et al. v. Gavin Newsom, et al.*** | Page | 8 of 12 |

relaxing its stay-at-home order on May 8, 2020. *Governor Newsom Provides Update on California's Progress Towards Stage 2 Reopening,* Office of Governor Gavin Newsom, May 4, 2020, available at https://www.gov.ca.gov/2020/05/04/governor-newsom-provides-update-on-californias-progress-toward-stage-2-reopening/. While the State has since reversed some of its efforts to reopen, over nine weeks elapsed between the dates when California began reopening and when it reversed course. *Guidance on Closure of Sectors in Response to COVID-19 July 13, 2020*, California Department of Public Health, July 13, 2020, available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Guidance-of-Closure-of-Sectors-in-Response-to-COVID-19.aspx.

Ballot-access laws in California also appear different from those in Michigan and Ohio since, as discussed above, non-major party candidates can gain access to the ballot through voter registration efforts that would not be affected by executive orders restricting physical location or activity. *Common Sense*, 2020 WL 3491041, at *8 (noting that Michigan's order "left no room for electronic submissions"). *Esshaki* therefore does not require the Court to enjoin California from enforcing the requirements that Plaintiffs challenge.

Plaintiffs also rely on *Idaho v. Little*, in which a district court enjoined Idaho from enforcing its signature collection laws relating to ballot initiatives. 2020 WL 3490216 (D. Idaho June 26, 2020) at *7. Plaintiffs first argue that the Ninth Circuit's decision not to stay the district court's order pending its consideration of the appeal's merits somehow suggests that the circuit court agrees with the district court's conclusion. Reply at 17. Not so. The Ninth Circuit's ruling was entirely procedural—it has not yet opined whether the district court's decision was appropriate. Moreover, *Little* is also meaningfully distinguishable from this case. Idaho requires petitioners seeking to place an initiative on the ballot to gather "in-person signatures." *Little*, 2020 WL 3490216, at *2. Like Michigan, Idaho issued a stay-at-home order during the signature-gathering period that "did not include an exception for First Amendment activities." *Id.* The record in that case also indicated that the plaintiffs made several efforts to reach out to state officials in search of guidance as to how to continue their ballot-access efforts in light of the pandemic and Idaho's election laws. *Id.* at *4-5. Officials responded that Idaho law made no allowances for online or electronic measures for ballot access and stated that "the Governor's Office has no intention of taking executive action on this matter." *Id.* In reviewing the plaintiffs' constitutional challenge, the Court ruled that, despite the plaintiffs' reasonable diligence in pursuing access to the ballot in the face of the ongoing pandemic, they could not appear on the ballot without violating Idaho law. *Id.* at *9. But those are not this case's facts. Plaintiffs could have pursued online means of appearing on the ballot, California's stay-at-home order permitted in-person campaign activity to proceed (with reasonable safety precautions such as social

Case 2:20-cv-05859-DMG-E Document 22 Filed 07/20/20 Page 9 of 12 Page ID #:474

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | ***Joseph Kishore, et al. v. Gavin Newsom, et al.*** | Page | 9 of 12 |

distancing and face masks), and Plaintiffs made no effort to seek guidance from state officials on how to continue their campaign during the pandemic.[4]

Plaintiffs also argue that, regardless of state-mandated restrictions, California's ballot-access laws are unconstitutional as applied to them because the signature requirement would force them and their campaign staff to choose between gathering the necessary signatures and taking the necessary precautions to avoid contracting and spreading the coronavirus. Reply at 6-7. No court appears to have held that a state election law violated a plaintiff's constitutional rights *solely* due to the coronavirus pandemic's impact on normal campaign activities (as opposed to a state's executive orders in response to the pandemic combined with preexisting election regulations). To the contrary, at least one circuit has concluded that states cannot be responsible for the existence and impact of the virus itself. *See Thompson*, 959 F.3d at 810 ("[W]e must remember, First Amendment violations require state action. So we cannot hold private citizens' decisions to stay home for their own safety against the State. Because the State has not excluded Plaintiffs from the ballot, the burden imposed on them by the State's initiative requirements cannot be severe.") (internal citations omitted); *Common Sense*, 2020 WL 3491041, at *7.

This argument also ignores the fact that other ballot initiatives have managed to obtain nearly one million signatures each during a signature-gathering period that overlapped with the pandemic's explosion in California. *See* Delucchi Decl. at ¶¶ 4, 16-19. Plaintiffs argue that the signature-gathering period for those ballot initiatives ran from December 2019 to June 2020, and therefore began before the pandemic started to impact daily life in this state. Reply at 9. But that argument is based on Plaintiffs' speculation alone. *See id.* Given that it is Plaintiffs' burden to demonstrate that the facts and law clearly support their request for a mandatory injunction, their unfounded belief that each ballot initiative collected most or all of their 900,000-or-so signatures before March or April 2020 is unpersuasive.[5]

---

[4] While Plaintiffs' concern about in-person contact with potential voters is understandable during a pandemic, they have not met their burden of demonstrating that such contact would be deadly when undertaken with recommended safety precautions, such as social distancing, the wearing of face coverings, and proper hygiene. For example, during the pandemic, consumers regularly are required to line up outside of grocery stores and other open public establishments at least six feet apart—nothing would have prevented Plaintiffs' signature gatherers from distributing leaflets, posting signs, or otherwise engaging with interested voters (from a safe distance) on how they may sign nominating petitions or register to vote near the entrance to a supermarket, train station, or other public place. Nor have Plaintiffs satisfied the Court that an electronic-based outreach by its supporters and organizers could not have been mounted.

[5] Plaintiffs also argue that one of the ballot initiatives' proponents has decided to postpone their initiative until the 2022 election "in light of the pandemic." Reply at 9-10. But, by Plaintiffs' own description, the proponents' concern appears to be the safe and smooth operation of the 2020 election itself, not its ability to collect enough signatures to appear on the ballot. *See* Reply at 10 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 10 of 12 |

In sum, Plaintiffs have not shown that they exercised reasonable diligence to maximize their efforts to appear on the ballot in November 2020. The Court therefore concludes that California's ballot-access requirements and stay-at-home orders do not "significantly impair" Plaintiffs' access to the ballot. *Rubin*, 308 F.3d at 1015. As a result, the burden that those laws place on Plaintiff is less than severe, and the Court must analyze the laws' constitutionality using the "less exacting" standard. *De La Fuente*, 930 F.3d at 1106.

**B.     California's Regulatory Interests Justify its Ballot Access Laws and Stay-at-Home Mandates**

As discussed above, election laws that impose less-than-severe burdens are constitutional so long as the State's regulatory interests are important and the restrictions at issue are reasonable, even-handed, and nondiscriminatory. *Washington State Grange*, 552 U.S. at 451; *Pub. Integrity All.*, 836 F.3d at 1024. It is beyond debate that states have a "right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986). This circuit recognizes that right as important. *De La Fuente*, 930 F.3d at 1106 ("The Supreme Court has long recognized the important state interest in requiring some preliminary showing of a significant modicum of support and in avoiding confusion, deception, and even frustration of the democratic process at the general election.") (internal quotations omitted).

The Ninth Circuit also recently determined in *De La Fuente* that, under normal circumstances, the very regulations that Plaintiffs challenge are constitutional because they "reasonably relate to California's important regulatory interests in managing its democratic process and are proportionate to California's large voter population." *Id.* at 1105 (analyzing the plaintiffs' constitutional challenge under the "less exacting standard"). The question then becomes whether the calculation changes under the unusual conditions that currently confront Plaintiffs and the State. The Court concludes that it does not.

Plaintiffs argue that the election laws are not even-handed and nondiscriminatory in this case because they allow major party candidates to simply file a form to gain ballot access while requiring non-major party candidates to undergo serious risk to gather signatures.[6] Reply at 6.

---

[6] At least one court has disagreed with that characterization of Plaintiffs' options. The Sixth Circuit in *Thompson* reasoned that:

> Plaintiffs' claim effectively boils down to frustration over failing to procure as many signatures for their petitions (because of social distancing and reduced public crowds) as they would without the pandemic. But that's not necessarily true. There's no reason that

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 11 of 12 |

This argument misses the point because the laws that Plaintiffs challenge apply only to independent candidates. *De La Fuente*, 930 F.3d at 1104. California has determined that major political parties have demonstrated the requisite "modicum of support" that justifies their place on the ballot. In seeking to streamline the ballot and reduce voter confusion, the State implemented methods through which "[n]on-major party candidates can access California's ballot." *Id.* at 1105. Even during the current pandemic, these apply equally and even-handedly to all non-major party candidates. As the court made clear in *De La Fuente*, the fact that the requirements operate to exclude a given candidate from the ballot does not mean that the statutory scheme is unconstitutional. *Id.* ("Although De La Fuente argues that his individual burden is severe because *he* might not appear on the ballot, California's overall scheme does not significantly impair ballot access.").

On balance, Plaintiffs have not made the required strong showing that California's election law scheme and stay-at-home orders are unreasonable, unequal, or discriminatory. The Court therefore cannot rule that they are unconstitutional or issue a mandatory injunction preventing California from enforcing them and inserting Plaintiffs' names onto the ballot.[7] Because Plaintiffs have not demonstrated a likelihood of success on the merits of their claims, the Court need not discuss the remaining *Winter* factors.

---

> Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting interested electors to contact them and bring the petitions to the electors' homes to sign. Or Plaintiffs could bring their petitions to the public by speaking with electors and witnessing the signatures from a safe distance, and sterilizing writing instruments between signatures.

*Thompson v. Dewine*, 959 F.3d 804, 810 (6th Cir. 2020). Plaintiffs have not satisfactorily addressed the feasibility of these methods of gathering signatures in their MPI.

[7] At the hearing on this matter, Plaintiffs confirmed that they seek a mandatory injunction. Plaintiffs argued that, if the Court simply prevented California from enforcing the ballot access laws that Plaintiffs challenge, they would simply have no means of appearing on the ballot. Plaintiffs asserted that the Court should therefore proceed one step further by affirmatively ordering California to place them on the ballot or, in the alternative, order California to adopt an easier-to-satisfy access requirement. But these options extend far beyond any relief granted by courts in cases that Plaintiffs cite (or in any that the Court has encountered in its own independent review of the case law). Indeed, the case on which Plaintiffs primarily rely, *Esshaki v. Whitmer*, makes clear that "federal courts have no authority to dictate to the States precisely how they should conduct their elections." 2020 WL 2185553, at *2 (6th Cir. May 5, 2020) (citing *Clingman v. Beaver*, 544 U.S. 581, 586 (2005)). Put simply, Plaintiffs essentially ask the Court to write their names onto California's ballot by judicial fiat. For the reasons addressed above, the Court cannot do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5859-DMG (Ex)** | Date | July 20, 2020 |
|---|---|---|---|
| Title | *Joseph Kishore, et al. v. Gavin Newsom, et al.* | Page | 12 of 12 |

# IV.
# CONCLUSION

In light of the foregoing, Plaintiffs' MPI is **DENIED**.

The current pandemic has made nearly every aspect of normal life more difficult and dangerous. Participation in the democratic process is no exception. In a case where a candidate can demonstrate the necessary diligence in pursuing ballot access, the pandemic and a state's response to it may operate to make that state's ballot-access regime unconstitutional as applied. But, under the law that the Court must apply, this is not such a case.

It is nonetheless incumbent on public officials to avoid forcing citizens who wish to exercise their right to participate in democracy to choose between their well-being and their constitutional rights. The pandemic has not relieved local, state, and federal elections officials of their obligation to foster free debate, recognize citizens and candidates of diverse views, and ensure that the people have the opportunity to cast their vote of choice. Moving forward, Defendants should strive to prepare for the upcoming November elections, with its unprecedented challenges, in the most proactive and transparent way possible, so that voters and candidates alike can be sure that they have all the information and means necessary to fully participate in the electoral process in the safest and most responsible way possible.

**IT IS SO ORDERED.**